UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN DOE,

                Plaintiff,

        v.

2001 ARTHUR LLC, YOEL SHAEFAR, AND JOHN DOE #2,

                Defendants.

No. 24-CV-9542 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

John Doe, proceeding *pro se*, asserts claims under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and New York's statutory warranty of habitability, as well as a negligence claim. Dkt. 1 ("Compl.") ¶¶ 22–34. Defendants 2001 Arthur LLC and Yoel Shaefar have defaulted, Dkt. 20, and Doe has filed a motion for default judgment as to those Defendants. Dkt. 26, 27 ("Pl's Default Mot."). Doe has also filed a motion to proceed anonymously, Dkt. 3 ("Pl's Mot. to Proceed Anonymously") and a motion to seal his default judgment motion. Dkt. 29 ("Pl's Sealing Mot."). For the reasons that follow, the Court (1) grants Doe's motion to proceed anonymously, (2) grants Doe's sealing motion in part, and (3) dismisses Doe's claims without prejudice.

## BACKGROUND[1]

On November 20, 2024, Doe, who is HIV positive, and his minor child were referred by the Human Resources Administration of the City of New York to an "emergency temporary shelter

---

[1] The Court is required to accept well-pleaded factual allegations in Doe's Complaint as true against a defaulting defendant for purposes of determining liability. *Bricklayers and Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr. LLC*, 779 F.3d 182, 188 (2d Cir. 2015); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009).

specifically for families that had a person living with HIV or AIDS." Compl. ¶ 6. This shelter, located at 2001 Arthur Avenue in the Bronx, was owned and operated by Defendants 2001 Arthur LLC and Yoel Shaefer (the "Defaulting Defendants"). *Id.* ¶ 4. Doe and his child received an individual unit in the shelter, and appear to have moved in on the same day Doe was referred there. *Id.* ¶ 6.

On arrival, Doe found many things wrong with his apartment: a broken sink, a nonfunctional stove, dead roaches, puddles of water, and a damaged door lock. *Id.* ¶ 8. He also alleges that there were used needles strewn about the unit. *Id.* The day he moved in, and while attempting to clean the unit, Doe was pricked by a used needle concealed within a bag. *Id.* ¶ 10. He complained about the conditions in the unit to "Tyrone," the shelter manager, the next day. *Id.* ¶ 11. Doe claims that Tyrone indicated that repairs to the unit would take several days, as the employee responsible for repairs had quit. *Id.* Dissatisfied with this answer, Doe "threatened legal action and demanded immediate repairs," and claims that Tyrone retaliated by contacting the HRA to accuse Doe of being disruptive and asking the HRA to "close the unit." *Id.* ¶ 12. Doe was then offered $500 by the Defendants to vacate the unit; instead, at Doe's request, the HRA "referred Doe to a different temporary shelter" on November 22, 2024, two days after Doe moved into Defendants' shelter. *Id.* ¶¶ 15–16.

"Over the next days and weeks" following his departure from the 2001 Arthur Avenue shelter, Doe suffered "significant emotional distress, fear and shame," primarily due to a fear that he may have contracted a disease from the needlestick injury Doe received when he attempted to clean his unit. *Id.* ¶ 17. Doe eventually fell ill with a "bacterial infection," necessitating two emergency room visits and one three-day hospitalization. *Id.* ¶ 18.

On December 10, 2024, Doe filed the instant action, bringing claims under the Fair Housing Act, the Americans with Disabilities Act, the New York State Human Rights Law, New York's statutory warranty of habitability, as well as a negligence claim. In his Complaint, Doe sought $500,000 in compensatory damages for his "emotional distress, physical harm, and economic losses" and $500,000 in punitive damages, as well as fees and costs. Compl. at 6. Doe also filed a motion to proceed anonymously due to his HIV-positive status, Dkt. 3, which the Court provisionally granted. Dkt. 21.

Service was properly made upon the Defaulting Defendants. Dkt. 15, 16. Doe did not serve, however, the individual named in his Complaint as John Doe #2, who Doe claims is named "Tyrone" and serves as the shelter manager at 2001 Arthur Avenue. Compl. ¶ 5. On August 4, 2025, the Clerk of Court entered a certificate of default as to 2001 Arthur LLC and Yoel Shaefer. Dkt. 20.

Doe filed his default judgment motion on August 28, 2025. Dkt. 26. He also filed a motion for leave to seal or redact his default judgment motion. Dkt. 28. In his default judgment motion, Doe advanced a new theory of damages: that his illness caused him to lose out on a business opportunity "valued conservatively at $3,000,000." Pl's Default Mot. at 4. Doe now seeks $2,000,000 in compensatory damages and $1,000,000 in punitive damages. *Id.* at 8.

A show-cause hearing was scheduled for October 31, 2025; on October 30, 2025, however, Doe submitted a request to decide his motion on his papers and adjourn the hearing, which the Court granted. Dkt. 35, 43.

**DISCUSSION**

Doe has three pending motions: (1) a motion to proceed anonymously, (2) a motion to seal his default judgment motion, and (3) a default judgment motion with respect to the Defaulting Defendants. The Court will address each motion in turn.

**A. Motion to Proceed Anonymously**

Doe seeks leave to proceed anonymously "due to the sensitive nature of Plaintiff's HIV-positive status and the risks associated with the disclosure of this information." Pl's Sealing Mot. at 1. When the Court evaluates a motion to proceed anonymously, it looks to the factors articulated by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008).[2] In considering the *Sealed Plaintiff* factors, and exercising its discretion to decide whether to permit a plaintiff to proceed anonymously, "the ultimate question is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Hirect One, Inc.*, 2022 WL 3903597, at *2 (S.D.N.Y. Aug. 30, 2022).[3]

The most important of these factors, at least to this case, is the first one, which asks "whether the litigation involves matters that are highly sensitive and [of a] personal nature."

---

[2] The ten *Sealed Plaintiff* factors are: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. *Sealed Plaintiff*, 537 F.3d at 190.

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

*Sealed Plaintiff*, 537 F.3d at 190.  As this Court has previously noted, the medical conditions "that have been deemed to justify anonymity . . . are conditions that carry significant social stigma, including sexually-transmitted or blood-transmitted diseases."  *Hirect One*, 2022 WL 3903597, at *2.  Other courts have recognized that HIV-positive plaintiffs "are in a highly sensitive position" and have granted those plaintiffs leave to proceed anonymously where, as here, their HIV status is relevant to their claims.  *Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001); *see Doe v. St. Vincent's Servs., Inc.*, 2021 WL 7909266, at *2 (E.D.N.Y. Sept. 29, 2021); *Doe v. City and Cnty. of San Francisco*, 2017 WL 1508982, at *2 (N.D. Cal. Apr. 27, 2017).  Accordingly, this factor weighs strongly in Doe's favor.

Relatedly, the third *Sealed Plaintiff* factor asks whether identification would cause "other harms" to a plaintiff.  *Sealed Plaintiff*, 537 F.3d at 190.  This factor also favors Doe; the Court credits Doe's argument that public exposure of his HIV status would "cause significant emotional and psychological harm."  Pl's Sealing Mot. at 3; *see St. Vincent's Servs.,* 2021 WL 7909266, at *2 (similar).  Furthermore, the sixth factor asks whether any defendants would be prejudiced if a plaintiff proceeds anonymously.  *Sealed Plaintiff*, 537 F.3d at 189.  Here, no prejudice would accrue to Defendants, as Doe has provided more than enough detail in his Complaint for them to identify him.  Nor, under the eighth factor, would the public's interest be served by disclosure of Doe's identity, as disclosure of Doe's HIV status "risks chilling others who face discrimination based on their highly stigmatized characteristics from seeking judicial relief."  *St. Vincent's Servs.,* 2021 WL 7909266, at *3.

In sum, and upon consideration of the *Sealed Plaintiff* factors, the Court finds that Plaintiff's interest in proceeding anonymously outweighs any prejudice to Defendants and the public's interest, and grants Plaintiff's motion to proceed anonymously.

5

### B. Motion to Seal Default Judgment Motion

Doe contends that even if he were permitted to proceed anonymously, "the combination of the redacted medical records, the allegations in the complaint, and identifying references such as the name of the record company and former manager could allow third parties to deduce Plaintiff's identity." Pl's Sealing Mot. at 1. He thus requests that the Court seal his default judgment motion in its entirety, or, in the alternative, permit him to propose redactions to that motion and its accompanying exhibits. *Id.* at 2.

Under *Lugosch v. Pyramid Co. of Onondaga*, a "common law presumption of access attaches" to judicial documents, which has more weight the more a document relates to "the exercise of Article III judicial power." 435 F.3d 110, 119 (2d Cir. 2006). This presumption must be balanced against competing considerations such as "the privacy interests of those resisting disclosure." *Id.* at 120. Where the presumption of access attaches, the proponent of sealing must "demonstrate[e] that closure is essential to preserve higher values and narrowly tailored to preserve that interest." *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).

Doe's default judgment motion is a judicial document: it "is the basis for the adjudication," so "only the most compelling reasons can justify sealing." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016). Because Doe has already been permitted to proceed anonymously, and has identified no "higher value" served by sealing the entirety of his default judgment motion, the Court will not permit him to do so.

Doe will be permitted, however, to propose redactions to his motion and exhibits, for several reasons. First, Doe has filed portions of his medical records as attachments to his motion. Courts have "recognized [a] privacy interest in medical records." *United States v. Sattar*, 471 F. Supp. 2d 380, 387 (S.D.N.Y. 2006). Indeed, "[c]ourts in this Circuit routinely seal medical

6

records" to protect that privacy interest. *Dabiri v. Fed'n of State Med. Bds. of the U.S., Inc.*, 2023 WL 3741978, at *3 (E.D.N.Y. May 31, 2023); *see Toolasprashad v. Toolasprashad*, 2021 WL 4949121, at *3 (E.D.N.Y. Oct. 25, 2021) (collecting cases). In line with these decisions, the Court finds that Doe's privacy interest in these documents outweigh the public's presumption of access. Accordingly, Doe may file his medical records under seal.

Second, Doe may propose limited redactions to his motion and other exhibits to protect inadvertent disclosure of his identity. As discussed above, Doe has a significant privacy interest in the nondisclosure of his identity due to his HIV status. The Court will review these redactions and determine whether Doe's privacy interest in the information he seeks to redact overcomes the presumption of public access. *See Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 157 (S.D.N.Y. 2015).

Upon consideration of the balancing test in *Lugosch*, therefore, the Court grants Doe's motion to seal in part. Doe must identify the medical records he seeks to seal and propose redactions to his motion and exhibits within 60 days of this Order. When he identifies proposed redactions, Doe must explain why they are necessary to prevent third parties from identifying him.

### C. Default Judgment Motion

In reviewing a default judgment motion, a court has discretion to "enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers and Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr. LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Because Doe is proceeding *pro se*, the Court has reviewed his papers with "special solicitude," and has attempted to identify the legal claims suggested by the Complaint based on the facts he has alleged. *Rutolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006).

The special solicitude shown to *pro se* litigants, however, has its limits: *pro se* complaints must still comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a statement showing that the plaintiff has stated a claim and is entitled to relief. *Levine v. Project Renewal*, 2024 WL 773722, at *1 (S.D.N.Y. Feb. 26, 2024). To state a claim, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, if a plaintiff has not "nudged [his] claim . . . across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.* "If a plaintiff fails to state a claim, a court cannot enter default judgment in plaintiff's favor—irrespective of [defendants'] failure to appear—and must instead dismiss the claim." *Graham v. HSBC Mortg. Corp.*, 2022 WL 1266209 (S.D.N.Y. Apr. 26, 2022); *see Lenard v. Design Studio*, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) ("Without a response from [defendants], this Court must first determine whether the allegations in [plaintiff's] Complaint are sufficiently pleaded to establish liability.").

For the reasons that follow, and accepting all well-pleaded facts as true, the Court finds that Doe has not stated federal claims under the FHA and ADA, and declines to exercise supplemental jurisdiction over Doe's remaining state-law claims.

1. **Fair Housing Act**

Doe first claims that the conditions in his shelter unit constituted a denial of reasonable accommodations under the FHA. Compl. ¶ 24. Section 3604(f)(1) of the FHA "prohibits discrimination in the sale or rental of a dwelling" because of a disability. *Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 516–17 (S.D.N.Y. 2009), *aff'd* 391 F. App'x 81 (2d Cir.

2010); *see* 42 U.S.C. § 3604(f). Section 3604(f)(2) prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling" because of a disability. The FHA defines "to rent" as "to lease, to sublease, to let and otherwise to grant for a consideration the right to occupy premises not owned by the occupant." 42 U.S.C. § 3602(e). Courts in this District have therefore interpreted both parts of Section 3604(f) to apply only to renters or buyers of dwellings. *Jenkins*, 643 F. Supp. 2d at 519–520.

"Courts within this Circuit have," furthermore, "used a two-part test in evaluating whether a building qualifies as a 'dwelling' covered by the FHA: (i) whether the structure is intended or designed for occupants who intend to remain for any significant period of time; and (ii) whether those occupants would view the structure as a place to return to during that period." *Levine v. Project Renewal*, 2024 WL 773722, at *4 (S.D.N.Y. Feb. 26, 2024).

Even assuming *arguendo* that Doe intended to stay in the temporary shelter for "any significant period of time," such that it constitutes a "dwelling," *id.*, Doe does not state a claim under the FHA because he does not "rent" his shelter unit within the meaning of the Act. He has made no allegation that he has furnished any consideration in order to use the unit. Indeed, from his pleadings, it appears he was placed in the temporary shelter by the City's Human Resources Administration. Compl. ¶¶ 6–8. "Courts in the Second Circuit have consistently held that the language of the FHA applies only to renters and buyers—not to someone seeking free government shelter." *Calderon v. City of New York*, 2025 WL2336439, at *7 (S.D.N.Y. June 6, 2025) (report and recommendation) (collecting cases). Accordingly, Doe does not state a claim under the FHA.

2. **Americans with Disabilities Act**

Doe claims that his shelter unit's conditions constitute a failure to provide a reasonable accommodation under the ADA. Compl. ¶ 28. Title III of the ADA prohibits discrimination in providing access to public accommodations operated by private entities. 42 U.S.C. § 12181 *et seq.*; *see PGA Tour v. Martin*, 532 U.S. 661, 675 (2001). A public accommodation includes "any inn, hotel, motel, or other establishment which provides lodging to transient guests." 42 U.S.C. § 2000a. For the purposes of this motion, the Court will assume that the 2001 Arthur Avenue shelter qualifies as a public accommodation providing "lodging to transient guests." *Accord Levine*, 2024 WL 773722, at *2.

"To bring a failure to accommodate claim, a plaintiff must show (1) he suffers from a disability; (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation." *Id.* at *2. Doe's HIV-positive status is a disability within the meaning of the ADA. *Bragdon v. Abbott*, 524 U.S. 624, 630–31 (1998). And his disability was known to the defendants because the 2001 Arthur Avenue shelter was "specifically for families that had a person living with HIV or AIDS." Compl. ¶ 6.

However, from the facts alleged in the Complaint, it does not appear that Doe ever requested a reasonable accommodation from Defendants, or that they refused to provide one. Doe's Complaint lists several problems with the unit, including "a broken sink," "a nonfunctional stove," "dead roaches," "large puddles of sitting muddy water," and a "damaged front door lock" that do not appear to be reasonably related to his disability. Compl. ¶ 8; *see Logan v. Matveevskii*, 57 F. Supp. 3d 234, 263 (S.D.N.Y. 2014) (a reasonable accommodation must have a "demonstrated relationship" to a "handicap or disability."). More relevant is Doe's contention that there were "needles and needle caps" strewn about the apartment, Compl. ¶ 8, assuming *arguendo* that

10

immunocompromised individuals are more vulnerable to infections from needlestick injuries. When Doe complained about the conditions in the apartment, he received a response that the person responsible for unit repairs had quit, and so "the repairs would likely not occur for several days." Compl. ¶ 11.

In the typical reasonable-accommodation case, a plaintiff usually alleges "requested modifications of shelter rules and practices due to his disabilities." *Levine*, 2024 WL 773722, at *2, and must demonstrate that a defendant refused to grant that request. The allegations in Doe's Complaint do not meet either requirement. He does not allege that he notified shelter staff that he required an accommodation for his disability; instead, he asked the shelter manager about the "repairs to the bathroom sink and stove." Compl. ¶ 11. Doe has not shown how either request relates to his disability. Furthermore, the shelter manager did not refuse his request; rather, he stated that the requested repair would occur within "several days." *Id.*

Doe has not stated a failure-to-accommodate claim under Title III of the ADA for an additional reason: he has sought only money damages in his Complaint. "Monetary relief, however, is not available to private individuals under Title III of the ADA." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004). Instead, only injunctive relief is available. *Id.* A plaintiff has standing to pursue injunctive relief under the ADA where (1) he is aware of the defendant's discriminatory conditions, (2) those conditions, and the plaintiff's awareness of them, are continuing, and (3) the plaintiff plausibly intends to return to the place of discrimination. *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008). Doe has failed to establish that an injunction is warranted, among other reasons, because he is no longer living in the 2002 Arthur Avenue shelter and has made no indication that he "plausibly intends to return" there. *Id.* Accordingly, Doe does not state a claim under the ADA.

### 3. State-Law Claims

Doe has also brought several state-law claims against the Defaulting Defendants. For the reasons that follow, Doe's state-law claims will be dismissed without prejudice.

Federal courts are courts of limited jurisdiction. When, as is the case here, a plaintiff and a defendant reside in the same state, a plaintiff may only sue that defendant in federal court where a federal statute provides a cause of action. In that circumstance, a federal court may also hear state-law claims that arise from the same "case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). But where both parties reside in the same state and a court has dismissed a plaintiff's federal claims, that court should not, in general, exercise jurisdiction over a plaintiff's related state-law claims. *See* 28 U.S.C. § 1367(c). Here, because Doe has not stated a claim under his federal causes of action, the Court will decline to exercise supplemental jurisdiction over his state-law causes of action. *See Fisk v. Letterman*, 501 F. Supp. 2d 505, 528 (S.D.N.Y. 2007). Accordingly, the Court will also dismiss Doe's state-law claims—his claims under the NYSHRL and the statutory warranty of habitability, and his negligence claim—without prejudice.

Because Doe does not state a claim under either the FHA or the ADA, and because the Court will not exercise supplemental jurisdiction over his state-law claims, Doe's default judgment motion is denied.

### 4. Leave to Amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts should generally provide a *pro se* plaintiff the opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011). Amendment is futile where "it appears that plaintiff cannot address the deficiencies identified by

12

the court and allege facts sufficient to support the claim." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order).

Although the Court is skeptical that Doe will be able to allege additional facts to state a valid claim under the FHA or the ADA, it nonetheless grants him 60 days' leave to amend his Complaint and detail his claims, if he has a good-faith basis to do so. Because Doe's Amended Complaint will completely replace, not supplement, the original Complaint, any facts or claims that he wants to include from the original complaint must be repeated in the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court (1) grants Doe's motion to proceed anonymously; (2) grants in part Doe's motion to seal, and (3) denies Doe's default judgment motion. Doe is granted leave to file proposed redactions to his default judgment motion and associated exhibits within 60 days of this Order. If Doe seeks to amend his Complaint, he must submit the Amended Complaint to this Court's Pro Se Intake Unit within 60 days of the date of this Opinion and Order, caption the document as an "Amended Complaint," and label the document with docket number 24-CV-9542 (RA). If Doe decides not to amend his Complaint, or fails to do so within the time allowed, the federal claims will be dismissed for failure to state a claim, and the Court will decline to exercise supplemental jurisdiction over his state law claims. He may, however, still bring his state-law claims in state court, assuming he does so within the relevant statute of limitations period. The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. 3, 26, 29, and 32, and to mail a copy of this Opinion and Order to Doe at his listed address.

SO ORDERED.

Dated:      January 29, 2026
              New York, New York

_____
Ronnie Abrams
United States District Judge

13